IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT ) | |
| OPPORTUNITY COMMISSION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:10-CV-827-WKW |
| ) | [WO] |
| FOLEY PRODUCTS COMPANY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Equal Employment Opportunity Commission ("EEOC") – on behalf of charging party Freddie Pharham – brings this Title VII race discrimination failure-to-promote and termination lawsuit against Defendant Foley Products Company ("Foley"). (Am. Compl. (Doc. # 7).) The case is before the court on Foley's Renewed Motion for Summary Judgment on All Claims (Doc. # 94), Motion to Strike the Jury Demand (Doc. # 97), and Alternative Motion for Summary Judgment on Plaintiff's Claim for Legal Damages and Victim-Specific Equitable Relief (Doc. # 98). All motions have been fully briefed and are ready for adjudication. Upon consideration of the parties' briefs, the relevant law, and the record as a whole, the court finds that Foley's Alternative Motion for Summary Judgment and Motion to

Strike the Jury Demand are due to be granted, and Foley's Renewed Motion for Summary Judgment on All Claims is due to be denied.

## I.  JURISDICTION AND VENUE

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. §§ 1331, 1343, and 1345.  Personal jurisdiction and venue are not contested, and the court finds adequate allegations in support of both.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*) (quoting Fed. R. Civ. P. 56(a)).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party

has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–24.

If the movant meets its evidentiary burden, the burden shifts to the nonmoving party to establish, with evidence beyond the pleadings, that a genuine issue material to each of its claims for relief exists. *Celotex Corp.*, 477 U.S. at 324; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). What is material is determined by the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (*per curiam*) (internal quotation marks and citation omitted).

A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001). However, if the evidence on which the nonmoving party relies "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted). "A mere 'scintilla' of evidence supporting the [nonmovant's] position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party," *Walker v.*

*Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990), and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (*per curiam*). Hence, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex Corp.*, 477 U.S. at 323.

On summary judgment, the facts must be viewed in the light most favorable to the nonmovant. *See Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002). Thus, "'facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case.'" *Id.* (quoting *Priester v. City of Riviera Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000)).

### III. BACKGROUND

Foley is a concrete products company, with headquarters in Columbus, Georgia. In late 2006, Foley opened a branch in Clanton, Alabama. On April 24, 2006, prior to the opening of the Clanton plant, Mr. Pharham, a black male, was hired as a forklift

operator. Mr. Pharham trained at Foley's plant in Winder, Georgia before moving to the Clanton plant. During his time at Foley, Mr. Pharham did well: He was promoted, received pay raises, and was given good reviews by his supervisors.

At the Clanton plant, Mr. Pharham was denied a promotion that he sought; the promotion was instead given to a white coworker. Additionally, nearly ninety percent of the Clanton plant's employees were laid off between 2007–2008 due to what Foley says was a "recession [that] devastated the construction industry." (Doc. # 95, at 7.) In 2008, a total of thirty-one employees were laid off.[1] Mr. Pharham was included in the first round of layoffs, which occurred on February 20, 2008. On that date, Mr. Pharham was the only black leadman and was the only leadman discharged.

The EEOC filed suit on September 29, 2010. Mr. Pharham was permitted to intervene as a plaintiff on January 31, 2012. (Doc. # 82.) On March 19, 2012, Mr. Pharham and Foley entered into a settlement agreement, resolving Mr. Pharham's claims against Foley. (Doc. # 99, at 10.) As part of the settlement agreement, Mr. Pharham agreed specifically to "not accept any more money or compensation whether defined as backpay, front pay, compensatory damages, punitive damages, prejudgment or other interest, costs, fees, or any form of legal relief," and to "not accept any further

---

[1] Eighteen white employees, nine Hispanic employees, and four black employees were laid off in 2008. (Doc. # 95, at 9.)

equitable, injunctive or affirmative relief from Foley[.]" (Pharham Aff. ¶¶ 5–6 (Ex. 7 to Doc. # 100).)

## IV.  DISCUSSION

**A.    Claims for Legal Damages and Victim-Specific Relief**

Foley requests that summary judgment be entered in its favor on the EEOC's claims for legal damages and other victim-specific relief because Mr. Pharham, as part of his settlement agreement with Foley, agreed not to accept any additional relief from Foley, whether the relief is legal or equitable.  (Doc. # 98, ¶¶ 7–9.)  The EEOC contends that it may continue to seek victim-specific relief because it has "broad, independent powers to conduct litigation, for the public interest, without being limited by the actions of private parties."  (Doc. # 110, at 8.)

The law does afford the EEOC broad and independent powers to conduct litigation.  Once the EEOC chooses to bring an enforcement action, it "is in command of the process."  *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 291 (2002).  In addition to general equitable relief, the EEOC may also seek compensatory relief and punitive damages on behalf of a victim, *see* 42 U.S.C. § 1981a(a)(1), as well as other equitable victim-specific relief.  Furthermore, the EEOC is not simply "a proxy for the employee[-victim]."  *Waffle House*, 534 U.S. at 298.  Even if the EEOC chooses to pursue entirely victim-specific relief, it may be "seeking to vindicate a public interest,

6

not simply [to] provide make-whole relief for the employee." *Id.* at 296 (holding that the fact that an employee had signed a mandatory arbitration agreement did not bar the EEOC from seeking victim-specific relief for the employee).

While the EEOC enjoys significant discretion in determining whether to bring an action and the type of relief to seek, the EEOC's powers are not without limits. The Supreme Court recognized that the relief sought by the EEOC may be limited by the victim's behavior, such as the victim's failure to mitigate damages or acceptance of a monetary settlement. *Id.* at 298 (citing *E.E.O.C. v. Goodyear Aerospace Corp.*, 813 F.2d 1539 (9th Cir. 1987)); *see E.E.O.C. v. Sidley Austin LLP*, 437 F.3d 695, 696 (7th Cir. 2006) (stating in dicta that if the employee-victims all "received settlements that ha[d] fully compensated them for the alleged violations of the age discrimination law[,] [t]hen the EEOC could obtain no monetary relief on their behalf"). In *Waffle House*, the Supreme Court reaffirmed the notion that "'courts can and should preclude double recovery by an individual.'" 534 U.S. at 297 (quoting *Gen. Tel. Co. of the N.W., Inc., v. E.E.O.C.*, 446 U.S. 318, 333 (1980)).

Contrary to the EEOC's assertions, Mr. Pharham's actions limit the type of recovery that it may seek. Mr. Pharham entered into a settlement agreement with Foley, specifically stating that he will not accept any more legal or equitable relief. The EEOC suggests that the court may prevent double recovery by offsetting any

7

award against the amount Mr. Pharham has received from the settlement. (Doc. # 110, at 14.) However, Mr. Pharham cannot accept any more money, or any other relief, from Foley without violating the settlement agreement. Because Mr. Pharham cannot accept any award, the only way to prevent double recovery (and a waste of judicial resources) is to disallow those claims from going forward. Thus, summary judgment is due to be granted in favor of Foley and against the EEOC, including but not limited to those items of relief mentioned in Mr. Pharham's affidavit (Ex. 7 to Doc. # 100), as to any claim that could accrue to the benefit of Mr. Pharham.[2]

## B. Demand for a Jury Trial

Foley also moves to strike the EEOC's jury demand, arguing that the EEOC is not entitled to a jury trial because it may only seek general equitable relief. (Doc. # 98, ¶¶ 11–12.) As discussed above, the EEOC may not seek any relief that could accrue to the benefit of Mr. Pharham. Only the EEOC's requests for general equitable relief in the Amended Complaint remain.[3] A party seeking only equitable relief under

---

[2] At the very least, the EEOC's prayers for relief in the Amended Complaint that are foreclosed include paragraphs C, D, E, and F, which request an order for Foley to "make whole" or "to pay" Mr. Pharham.

[3] The remaining prayers for relief include requests that the court "[g]rant a permanent injunction enjoining Defendant Employer, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in discrimination based on race, including failing to promote employees based and terminating employees based on race," "[o]rder Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for black employees, and which eradicate the effects of their past and present unlawful employment practices," and "[a]ward the Commission its costs of

Title VII is not statutorily or constitutionally entitled to a jury trial. *See* § 1981a(c) (conferring a right to a jury trial onto a party seeking compensatory or punitive damages in a disparate treatment in employment case); *E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 619 (11th Cir. 2000) (holding that "front pay retains its equitable nature under Title VII after passage of the Civil Rights Act of 1991" and that the judge, not the jury, was to decide whether to award the remedy), *Williams v. City of Montgomery*, 742 F.2d 586, 590 (11th Cir. 1984) (*per curiam*) (holding that the parties were not entitled to a jury trial on a Title VII where only equitable relief was sought). Thus, the EEOC's demand for a jury trial is due to be struck. *See Journigan v. Eastover Bank for Sav.*, 805 F. Supp. 415, 418 (S.D. Miss. 1992) (striking the plaintiff's jury demand in a Title VII case where the court had dismissed the plaintiff's claims for compensatory and punitive damages and only claims for equitable relief remained); *accord Walls v. Life & Cas. Ins. Co. Of Tennessee*, No. C-81-118-G, 1981 WL 327, at *2 (N.D. Ga. Dec. 15, 1981); *Jones v. Dalton*, No. Civ. A. 95-0289, 1996 WL 421945, at *4 (E.D. Pa. July 18, 1996) ("Because we grant summary judgment regarding compensatory damages, and punitive damages are not available against a government agency, *see* 42 U.S.C. § 1981a(b)(1), plaintiff is not entitled to a jury trial.").

---

this action." (Am. Compl. 5–6.)

**C.    Substantive Claims**

The EEOC brings claims under Title VII, alleging that Mr. Pharham was denied a promotion and terminated because of his race. (Am. Compl. ¶¶ 6–19.) Foley argues that summary judgment should be granted in its favor on these claims because it can establish legitimate, nondiscriminatory reasons for denying Mr. Pharham the promotion and for laying him off. (Doc. # 94, at 2.) First, the general principles guiding Title VII claims will be discussed, followed by an analysis of the EEOC's failure-to-promote claim, and ending with an analysis of the EEOC's termination claim.

*1.    General Principles of Title VII Claims*

Title VII prohibits employment discrimination on the basis of race. *Ricci v. DeStefano*, 557 U.S. 557, 129 S. Ct. 2658, 2672 (2009). A disparate treatment claim under Title VII occurs "where an employer has 'treated [a] particular person less favorably than others because of' a protected trait." *Id.* (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 985–86 (1988)). A disparate treatment claim requires proof of discriminatory intent by either direct evidence, or circumstantial evidence of that intent using the burden shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Crawford v. Carroll*, 529 F.3d 961, 975–76 (11th Cir. 2008). This is not a direct evidence case, and the *McDonnell Douglas*

framework applies.

First, under *McDonnell Douglas*, a plaintiff must create an inference of discrimination by establishing a *prima facie* case. *Williams v. Motorola, Inc.,* 303 F.3d 1284, 1293 (11th Cir. 2002). The burden to establish a *prima facie* case is not intended to be "onerous," but requires only that the plaintiff establish adequate facts to permit an inference of discrimination. *Holifield*, 115 F.3d at 1562 (citations omitted). Next, should the plaintiff establish a *prima facie* case, the burden shifts to the defendant to present legitimate, nondiscriminatory reasons for the employment action. *Id.* at 1564. Once the defendant has presented a legitimate, nondiscriminatory reason for its action, the burden shifts back to the plaintiff to produce "sufficient evidence to find that the employer's asserted justification is false" and in reality, a pretext for unlawful intentional discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, (2000). In other words, at the summary judgment stage, the plaintiff may survive by providing a *prima facie* case and evidence sufficient for a jury to find that the employer's proffered explanation is false. *Id.* at 147–48.

### 2. *Failure-to-Promote Claim*

For a failure to promote claim, the EEOC may establish a *prima facie* case by showing: (1) Mr. Pharham was a member of a protected class; (2) he was qualified

for and applied for the promotion; (3) he was rejected despite his qualifications; and (4) an individual of a different race was promoted. *Wright v. Southland Corp.*, 187 F.3d 1287, 1290–91 (11th Cir. 1999). The parties easily satisfy steps one and two of the *McDonnell Douglas* framework. The EEOC has established a *prima facie* case by showing that Mr. Pharham is a member of a protected class (he is black), he was qualified for and did apply for a promotion, Mr. Pharham did not get the promotion, and another employee (who is white), did get the promotion. Foley has also met its burden by presenting legitimate, nondiscriminatory reasons for its decision to not promote Mr. Pharham. These reasons include that the promoted employee "was more 'hands on' with the work, more versatile, had more supervisory experience, and had the better work ethic," and that Mr. Pharham did not have supervisory experience. (Doc. # 95, at 14.)

On summary judgment, however, Foley finds itself stuck at the third step, the pretext stage. The EEOC has demonstrated "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Foley's proffered reasons for its failure to promote Mr. Pharham such that a "reasonable factfinder could find them unworthy of credence." *Corbitt v. Home Depot U.S.A., Inc.* 573 F.3d 1223, 1248 (11th Cir. 2009). The parties dispute the qualifications of Mr. Pharham and the promoted employee, including their past work experiences, supervisory experiences,

12

and performance problems at Foley. There are also genuine disputes over the facts surrounding the promotion process itself. Thus, summary judgment is due to be denied as there are genuine disputes of material fact as to whether Foley's reasons for not promoting Mr. Pharham were a pretext for racial discrimination.

### *3.    Termination Claim*

The facts of this case do not present a typical termination claim (such as a termination for disciplinary problems). Instead, Mr. Pharham's employment was terminated due to a reduction in force. To establish a *prima facie* case of employment discrimination in a reduction-in-force case, the EEOC must show (1) that Mr. Pharham is a member of a protected class; (2) that he was qualified for his position; (3) that he was subjected to an adverse employment action; and (4) produce sufficient evidence from which a rational factfinder could conclude that Foley intended to discriminate on the basis of race against Mr. Pharham in making the discharge decision. *Tran v. Boeing Co.*, 190 F. App'x 929, 932–33 (11th Cir. 2006) (*per curiam*) (citing *Standard v. A.B.E.L. Serv., Inc.*, 161 F.3d 1318, 1331 (11th Cir. 1998)).

The EEOC can establish a *prima facie* case. The first three prongs are undisputed: Mr. Pharham is a member of a protected class (black), he was highly qualified for his position, and he suffered an adverse employment action when he was

laid off. The parties dispute whether the EEOC has produced sufficient evidence to establish prong four. It is undisputed that on the day Mr. Pharham's employment was terminated, Mr. Pharham was the only black leadman, and no other leadman was laid off. The EEOC has shown that Foley treated similarly-situated employees outside Mr. Pharham's class more favorable; white leadmen were not laid off. *See Crawford*, 529 F.3d at 970 (stating that a plaintiff may establish prong four for a *prima facia* case of racial discrimination by showing that the plaintiff's "employer treated similarly situated employees outside her class more favorably"). Given that the EEOC's burden to establish a *prima facie* case is not "onerous," the court is satisfied that the EEOC has met its burden.

Foley contends that due to an economic downturn, "a reduction in force was necessary at [its] Clanton facility in 2008." (Doc. # 95, at 9.) Thirty-one employees were laid off in 2008. Foley asserts that in determining which employees to let go, management used factors such as the employee's "observed versatility, ability to perform multiple duties and tasks, and who would make the strongest team as the workforce contraction took place." (Doc. # 95, at 9.) Foley states that Mr. Pharham was laid off because "of his lack of versatility – his limited skill set." (Doc. # 95, at 15.)

14

The EEOC does not dispute that Foley laid off most of its labor force in 2008. As evidence of pretext, however, the EEOC points to the undisputed fact that Mr. Pharham was the only black leadman, and he was the only lead man laid off in the first round of layoffs. (Doc. # 108, at 26–27.) Furthermore, it argues that Foley's motion is insufficient to establish that Mr. Pharham lacked versatility or had a limited skill set such that he should be laid off. (Doc. # 108, at 47.)

Foley's own evidentiary submissions are inconsistent with their stated reasons for choosing to discharge Mr. Pharham, and accordingly, Foley has not presented evidence indicating there is no dispute of material fact.[4] The court deems it appropriate to decide the issue on a more developed record than the one before it. Accordingly, summary judgment is due to be denied as there are genuine disputes of

---

[4] In particular, Mr. Sapone and Mr. Dean give inconsistent versions of the layoff process, who determined that Mr. Pharham would be laid off, and the reasons for Mr. Pharham's selection. For example, Mr. Sapone, in his deposition, stated that his role in the layoff process was only to "select the employees that would make the strongest team," and that he did not select the employees to be laid off, "somebody above [him]" did that. (Sapone Dep. 40–41 (Ex. 2 to Doc. # 96).) A few questions later, however, Mr. Sapone agreed that he participated in the decision to lay off Mr. Pharham. (Sapone Dep. 41.) Mr. Dean asserts that his role in the layoff process was merely to tell the department heads how many employees they could keep, receive layoff recommendation list from the department heads, and approve the recommendations. (Dean Dep. 20 (Ex. 3 to Doc. # 96).) Mr. Dean then stated that Mr. Pharham was selected to be laid off because of his work performance. (Dean Dep. 30–31.) It also seems, at one point, Foley asserted that Mr. Pharham was laid off because his department "had become so small that it no longer needed a Lead Man in order to operate." (Sapone Dep. 41.) This reason was not raised in Foley's brief.

material fact as to whether Foley's reasons for discharging Mr. Pharham were a pretext for racial discrimination.

## V. CONCLUSION

Based upon the foregoing reasons, it is ORDERED that

1. Foley's Alternative Motion for Summary Judgment on Plaintiff's Claim for Legal Damages and Victim-Specific Equitable Relief (Doc. # 98) is GRANTED in favor of Foley and against the EEOC, including but not limited to those items of relief mentioned in Mr. Pharham's affidavit, as to any claim that could accrue to the benefit of Mr. Pharham;

2. Foley's Motion to Strike the Jury Demand (Doc. # 97) is GRANTED and the Clerk of the Court is DIRECTED to strike the jury demand in this case; and

3. Foley's Renewed Motion for Summary Judgment on All Claims (Doc. # 94) is DENIED.

DONE this 11th day of July, 2012.

                                              /s/ W. Keith Watkins
                                  CHIEF UNITED STATES DISTRICT JUDGE